The judgment of the Court of Common Pleas will therefore be affirmed at costs of the appellant.

*Judgment affirmed.*

Doyle and Stevens, JJ., concur.

Guernsey, P. J., of the Third Appellate District, and Stevens and Doyle, JJ., of the Ninth Appellate District, sitting by designation in the Eighth Appellate District.

Abraham, Appellee, *v.* City of Warren et al., Appellants.

(Decided November 14, 1940.)

*Mr. Alexander Spain,* for appellee.
*Mr. Bruce P. Henderson,* for appellants.

Phillips, J. Reference will be made to the parties

as they stood in the Court of Common Pleas of Trumbull county. It is from the findings and judgment of that court that the defendant, the city of Warren, appeals to this court on questions of law.

Plaintiff filed a suit in the lower court to recover damages from the defendant, city of Warren, for partial, wrongful demolition of a building situated on her land in that city, and asked for an injunction to permanently restrain the city and also defendant Lewis Nichols, a contractor, from further demolition of the building, which they threatened to do under emergency legislation, detailed reference to which is hereinafter made.

A temporary restraining order was allowed by the lower court as prayed for in that action, and, upon motion of defendant, was later dissolved. From that order plaintiff appealed to this court on questions of law and fact, which appeal was dismissed by this court on the ground that the order appealed from was not a final appealable order.

The evidence discloses that the building inspector of defendant, city of Warren, acting under authority and by virtue of the provisions of ordinance No. 2527 (passed March 4, 1931) condemned, early in October 1938, the building situated on plaintiff's land on Franklin street in that city. On the 21st day of October 1938, the building inspector mailed a written notice to the plaintiff, in whose name title to the property appeared of record, to demolish the building within 48 hours. Plaintiff failed to comply with that notice and thereafter on the 26th day of October the building inspector sent, by registered mail, a second notice to plaintiff, advising her that the work of demolishing the building would commence on the 28th day of October, which notice she duly received on the 27th day of the same month, and receipt of which she personally acknowledged on the regulation postal return receipt card.

The evidence further discloses that ordinance No. 2527 provided in part that:

"Any building or portion thereof, including buildings and, or structures in process of erection, if found to be dangerous to persons or property, or unsafe for the purpose for which it is being used, or in danger from fire due to defects in construction, or dangerous for use because of insufficient means of egress in case of fire, or which violates the provisions of this code due to removal, decay, deterioration or falling off of anything, appliance, device or requirement originally required by this code, or which has become damaged by the elements or fire to an extent of 50 per cent of its value, may be condemned by the building inspector."

The evidence further discloses that council of defendant, city of Warren, acting under authority of ordinance No. 2527, passed emergency resolution No. 1294, on December 7, 1938, ordering plaintiff's building demolished and authorizing the building inspector to enter into an agreement with defendant Nichols to do the work for the building material he could salvage, for the reasons that:

"Whereas, a certain two-story frame building, located on lot No. 706, known for street purposes as No. 132 Franklin street, S. W., Warren, Ohio, has decayed by action of the elements, as well as, the lack of any repairs or maintenance over a period of years, to the extent of more than 50 per cent of its value, for which reason the structure has been condemned by the building inspector as dangerous to persons and property and unsafe for occupancy, and in danger of fire due to defects of construction and decay; and impossible of repair; and

"Whereas, the owner of said property, Mrs. Edna Abraham, No. 175 Elm Rd., S. E., Warren, Ohio, has permitted said dangerous condition to exist for a long period of time in violation of the provisions of the

Warren building code, notwithstanding repeated notice and demand upon said owner, served by the building inspector to the effect that said building in its present defective condition is a nuisance which must be abated in the interests of the public safety."

The evidence discloses that that contract was subsequently executed and the work of demolishing the building commenced and partially completed.

Upon hearing the case on its merits, the lower court found, among other things, that plaintiff was the owner of the premises involved; that the second notice of defendant, city of Warren, to plaintiff, required by sub-section 5 of ordinance No. 2527, was not personally served upon her as required therein, and was not in compliance with law; that the ordinance was a valid constitutional enactment; that resolution No. 1294, passed in pursuance to ordinance No. 2527, was an emergency resolution; that plaintiff's "premises were dangerous by reason of fire and health hazards amounting to an emergency"; and that she was deprived of her property without just compensation and due process of law. The trial court entered judgment as follows:

"Wherefore, it is ordered, adjudged and decreed that the injunction in said cause be and the same is hereby made permanent against the city of Warren and the defendant, Lewis Nichols, except on the following conditions:

"1. That the city of Warren, one of the defendants herein, pay to the plaintiff, Edna Abraham, the sum of $550 as damages for the wrongful demolition of the property, for which amount judgment is hereby awarded the plaintiff.

"2. That in the event the city of Warren pays to the plaintiff, Edna Abraham, the sum of $550 the injunction herein granted shall be dissolved and the plaintiff may thereupon proceed to demolish said building."

The appeal of defendant, city of Warren, to this court, is only from the finding and judgment of the lower court that the service of notice upon the plaintiff was not in accordance with law, that the partial demolition of her property was wrongful, and that she was deprived of her property without due process of law and just compensation.

Taking the view of this case that we do, as indicated herein, we deem it unnecessary to pass upon any of the questions raised by the pleadings, evidence or briefs, or to pass upon any of the questions passed upon by the lower court, other than that raised by the plaintiff that her building could be repaired and that she was afforded no opportunity to make the necessary repairs thereto. We also deem it unnecessary to determine whether the building constituted a nuisance and whether the peril to public safety was so imminent as to warrant such summary action as its destruction.

"1. The exercise of the power conferred upon municipalities by Section 3636, General Code, to regulate the sanitary condition of buildings and to provide for their inspection, repair and destruction, if necessary, is arbitrary in its nature; but it arises from necessity, and must always be distinctly for the public welfare, and with full recognition of the inviolateness of private property, as guaranteed in the Bill of Rights (Section 19, Article I of the Constitution) and the property must constitute a nuisance and the peril be imminent to warrant such summary action as its destruction." *Maxedon* v. *Rendigs, Commr. of Bldgs*, 9 Ohio App., 60.

The law applicable to the question presented apparently is clear and we must accordingly proceed to a review of the evidence on this phase of this case to determine whether it supports the action of the defendant city in condemning and ordering the demolition of plaintiff's building.

With the consent and approval of counsel for both

parties the members of this court viewed the building in litigation for the purpose of better understanding the evidence presented.

It appears from the evidence that the foundation sills, framework and roof of the main part of the plaintiff's building are solid and sufficient for safety, and the building is "fundamentally in good condition, fundamentally sound," but that new doors and some new windows are needed, and repairs to the chimneys, floors, spouting, front of the building (which defendant demolished) and to the plaster, weatherboarding, toilet and drainage facilities and other parts of the building are necessary; that immediately prior to October 1938 the property was fairly worth $3,500 to $4,000; and that with an expenditure of about $800 it would produce a monthly income of about $40 a month, but if destroyed the land income would be practically nothing.

The undisputed evidence is that the stairway and that part of the building in which it is situated is so constructed, and in such an unsafe condition as the result of a fire, as to constitute a fire hazard. The evidence further shows that these are repairable; that plaintiff, through her agent, sought and was refused a permit to repair the building; that to be entirely safe that portion of the building should be repaired or rebuilt at once; and that the toilet and drainage facilities are either gone or in such an unsanitary condition that they must be repaired or replaced before the building will be in a sanitary condition and fit for occupancy.

The only warrant for public interference with plaintiff's building is to secure public safety and to protect the health of those occupying the building. The evidence discloses that these purposes can be accomplished by the expenditure of approximately $800, or at the most, of not more than $1,500.

"Desirable as it might be from an æsthetic point of view to have public control of private building, the law does not permit an invasion of private rights on such

grounds.'' *Maxedon* v. *Rendigs, Commr. of Bldgs., supra,* at page 63.

While there is evidence to the effect that the building is defective and, in its present condition, is unsanitary, is a health hazard, is unsafe for occupancy, and is a fire hazard because of decay and defects of construction, yet the undisputed evidence is that it is not impossible to repair it. Although the evidence is conflicting and contradictory as to whether the building has decayed to an extent of more than 50 per cent of its value, the weight of the evidence is that it has not.

It is not the province of this court, and this court will not undertake to decide as an economic proposition whether it would be more desirable for plaintiff to raze the present structure to the foundation and use the material and the cost of repair for the erection of another structure upon that foundation, or to repair and rebuild the present structure. That is a matter in which the plaintiff is entitled to act upon her own choice and judgment, so long as she pays due regard to the right of the public, and tenants of the building, to secure proper safety and sanitary conditions. Even though it might be entirely unwise from a financial view point for the owner to undertake to preserve so much of her building as is admitted to be safe, she has the right to and is acting within her rights in so doing, so long as she does not impair the lives or property of others by maintaining the structure so rebuilt.

As the result of a careful reading of the record and search of the law applicable, we are of opinion that, under all the circumstances of this case, plaintiff should have been given an opportunity to repair the building and to reconstruct and repair the stairway and the sanitary facilities and the rest of the building to the satisfaction of the building inspector and make it safe for the occupancy of tenants thereof and the general public.

Clearly under the evidence and this holding, plaintiff

is entitled to recover damages in this action for that portion of her building which was wrongfully demolished.

We interpret the holding of the lower court as allowing damages for the demolition of plaintiff's entire building whereas the evidence indicates but a partial demolition thereof, and therefore the cause is remanded to the lower court for the assessment of damages for partial demolition thereof.

Coming now to render the judgment which the lower court should have rendered, we order, adjudge and decree that the injunction allowed by the lower court be and the same is hereby made permanent, and remand the cause to the lower court with instructions to carry this decree into effect.

*Judgment accordingly.*

NICHOLS, P. J., and CARTER, J., concur.